Opinion by
Cunningham, P. J.
In June, 1912, defendants in error, Smith and the Trust Company, were appointed by the Denver District Court receivers of the Denver, Laramie & Northwestern Railroad Company. On August 30th of the same year plaintiff in error filed its petition in said receivership proceedings, wherein it is alleged that the assignor of plaintiff in error, the Hicks Locomotive & Car Works Company, delivered to the railroad company in 1910, two locomotives, said locomotives being delivered under an instrument designated “a car trust indenture,” which indenture, or agreement, was duly executed and recorded pursuant to the provisions of sections 5523, 5524 and 5525 R. S. 1908; sections 6172, 6173 and 6174 M. A. S. (1912).
The railroad company, as a part of the aforesaid transaction, executed and delivered to plaintiff in error’s assignor, notes aggregating an amount equal to the purchase price of said locomotives, to-wit, $13,600, less some $4,500 paid in cash. At the time of the appointment of the receivers the railroad company had paid all but $500, which was represented by a note long past due. The agreement between the plaintiff’s assignor and the railroad company provided, among other things, that the title in the locomotives should not vest in the railroad company, but should remain in the vendor, plaintiff’s assignor, until the full sum provided by the contract had been paid by the railroad company, and further, that in the event of default by the railroad company to fully carry out the' provisions of the agreement, the vendor, plaintiff’s assignor, “may resume possession of said *451 .locomotives, and the contents thereof * * * and may thereafter sell the same at public or private sale,” under conditions with reference to' the selling and the disposition of the proceeds not necessary to be here set forth.
In its petition plaintiff prayed that an order might be entered directing the receivers to forthwith turn over to it the said locomotives. The receivers, answered the petition of plaintiff in error, admitting all the allegations thereof, “but denying the legal effect alleged and claimed for said facts,” (referring to the facts set up in the petition or complaint), and alleging further that “owing to certain facts and conditions, and certain matters of litigation and controversy, not absolutely within the control of said receivers, they have been unable to either confirm and carry out the contract between the Denver, Laramie & Northwestern Railroad Company, and the Hicks Locomotive & Car Works, a corporation, predecessor in interest to the said Locomotive '& Car Works, alleged, set forth and attached to said petition, or, whether they would repudiate and disaffirm said contract.”
We take it from the quotation last made from the answer of the receivers that they mean to allege that they have, for the reasons therein stated, been unable to determine whether they would affirm the contract of conditional purchase made between the railroad company, and the assignor of plaintiff in error, or whether they would repudiate the same. In the first place it will be observed that the allegation of the answer, above quoted, is couched in the most guarded and indefinite language possible. The nature of the “certain facts and conditions, and certain matters of litigation and controversy” which were “not absolutely within the control of said receivers” is not disclosed, nor is it stated why the receivers had been unable to determine whether they would confirm or repudiate the contract. It is not alleged that they were not possessed of sufficient *452 funds. So far as this allegation goes their uncertain situation was due entirely to a mental attitude.
On the coming in of this answer plaintiff in error filed a motion for judgment on the pleadings. This motion was denied, and upon this order of denial the case is brought here by plaintiff in error for review. No contention is made in the briefs, or on the oral argument, that the order of the court denying the motion for judgment upon the pleadings was not a final determination of the petitioner’s rights, or that it was not a judgment or order to which a writ of error would lie.
In their briefs and on oral argument the chief contention of the receivers and the Bankers’ Trust Company, (the latter representing certain bond-holders), seemed to be that because of the quasi public character of the railroad company, plaintiff was not entitled to a summary order for possession of the locomotives, even though its title and the allegations of its petition were confessed; that the court having charge of receivership proceedings had authority, within certain bounds, to postpone plaintiff’s remedy in the interest of the public, and other creditors of the railroad company.
This contention appears to find support in the opinion rendered in Frank v. Denver & Rio Grande Ry. Co., (C.C.) 26 Fed. 123. In that case Judge Hallett held that the payment of a claim of a creditor, situated somewhat similar to the plaintiff in error, ought to be postponed or deferred, as to the principal sum, until other defendants “on an equal footing, if not in advance, of the rolling stock contracts, should be satisfied.” The peculiar facts in the Frank case made this ruling of Judge Hallett’s highly equitable. In that case it appears that the creditors to whom Judge Hallett referred as being “on an equal footing, if not in advance of the rolling stock contracts,” were laborers who “wrought and gave of their substance under promise of prompt payment from the railroad company.” Moreover, *453 the record in the Frank case “disclosed that payments made by the receivers under these contracts (with the rolling stock people), have so absorbed the earnings of the road that the orders of the court relating to labor and supply demands remain in large part unexecuted.” Judge Hallett in the Frank case, nevertheless, ordered that the interest on the claim of the rolling stock people should be paid from the income of the road.
There is no allegation in the answer in this case to bring it within the ruling laid down by Judge Hallett. The récord shows that the receivers have paid no interest, and nothing upon the principal of plaintiff’s claim, though the same was long past due, and was in default when they took possession of the road. There is no allegation that there were overdue labor bills, or that there was any other claim against the estate which was on an equal footing with plaintiff’s claim. And, further, we find no allegation in the answer from which even an inference can be drawn that the locomotives were necessary to the maintenance of the road, or that turning them over to the possession of the plaintiff would, in any wise, embarass the receivers.
While it is true that the appointment of a receiver frequently leads to a conflict of rights as to the possession of property, and while it is true that the court having jurisdiction of the estate will not permit third parties to interfere with the receivers’ possession without its consent, still the courts never unecessarily interfere with the rights of third persons to repossess themselves of their own property. Indeed, unless it is made affirmatively and clearly to appear that for some reason recognized by the rules of equity, the rights of third persons ought to be postponed, it is the duty of the court having jurisdiction of the estate to facilitate their efforts to enforce such rights. (This is the plain duty of the court even where the rule is not-changed or affected by statute.)
*454 Our statute provides that “Every such contract, specified in sections 1 and 2 (and the contract here under consideration was such a contract), shall be good, valid and effectual, both in law and equity, against all purchasers and creditors,” sec. 6174 M. A. S. (italics ours), on condition, of course, that the contract has been acknowledged, recorded, and the locomotives properly marked, etc., all of which provisions, it is admitted, plaintiff in error had strictly complied with.
The opinion in Frank v. Denver & R. G. Ry. Co., supra, was handed down in February, 1885. The statute from which we have quoted became effective in 1905, and the previous statute of 1885 did not go into effect until a month after the opinion in the Frank case was rendered. The contract or agreement involved in the Frank case was entered into in 1878, hence it will be seen that there was then no statute making such contracts “good, valid and effectual * * * against all purchasers and creditors.”
To hold that plaintiff’s right in this case to repossess itself of the locomotives in question, under the circumstances here disclosed, must be deferred or postponed to the rights of other creditors would be to nullify the statute upon which plaintiff relied, and upon which it had a right to rely, when it entered into the agreement with the railroad company. Indeed, by a well known rule of construction the sections of our statute referred to must be held to have been written into and to have become a part of the agreement or contract which we are considering. But, the statute aside, the conclusion that we have reached in this case is not believed to be in conflict with any authorities cited by defendants here.
In U. S. Trust Co. v. Wabash West. Ry. Co., 150 U. S., 300, 37 L. Ed., 1085, 14 Sup. Ct., 90, it is said:
“The court did not bind itself or its receivers (to pay the agreed rental of a leased line), eo instanti by the mere act of taking possession. Reasonable time necessarily had *455 to be taken to ascertain the situation of affairs.”
In other cases cited by defendants in error a similar ruling is announced. In some of these cases the attempt was being made to hold the receivers to a hard and fast contract possessing no alternative feature.
In. this case, as will later be seen, plaintiff seeks to do nothing more than to require the defendants to make an election between paying the small balance due and surrendering the two locomotives.
It ought not to require much time for defendants to elect between paying a balance of $500 on a $13,600 contract and delivering two locomotives, for which the railroad company had obligated itself to pay the latter sum. Especially would this appear to be true if these locomotives were indispensable to the operation of the railroad system. Defendants had had from June 13th, 1912, (the day of their appointment), to August 30th (the date of demand made upon them by plaintiff for possession), in which to determine whether they would affirm the contract, and pay the balance due, or turn back the machinery. If this were hot ample time in which to. decide so trivial a matter, the receivers should' have been able to settle it when they filed their answer on December 11th, more than three months later. The motion for judgment on the pleadings was not filed until January 31st, 1914, and was not heard until March 12th, 1914, one year and nine months after plaintiff in error had filed its petition demanding possession. We feel, therefore, justified in saying that if there existed any peculiar circumstances or facts making an election on the part of defendant in error, after so long a time, impossible or unreasonable, they should have disclosed same in their original answer.
On the oral argument counsel for the plaintiff in error repeatedly asserted that his client had no desire to take any advantage of the defendants, and desired nothing further than that the amount of money yet due on its contract, *456 together with the stipulated expense of enforcing its legal and equitable rights, should be paid.
The judgment of the trial court will, therefore, be reversed, with directions that the motion of plaintiff for judgment on the pleadings be granted, and that a judgment be entered on such motion in favor of plaintiff in error, requiring the receivers to forthwith surrender possession of the locomotives, or pay, within thirty days from the date of entering judgment, the balance due plaintiff in error under the terms of the contract sued upon.

Reversed with directions.